UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

STEVE MARTINEZ,                          )     NO. EDCV 09-0716-CT
                                         )
              Plaintiff,                 )     OPINION AND ORDER
                                         )
         v.                              )
                                         )
MICHAEL J. ASTRUE,                       )
Commissioner of                          )
Social Security,                         )
                                         )
                                         )
              Defendant.                 )
                                         )
_____ )

     For the reasons set forth below, it is ordered that judgment be
entered in favor of defendant Commissioner of Social Security ("the
Commissioner") because the Commissioner's decision is supported by
substantial evidence and is free from material legal error.

                         SUMMARY OF PROCEEDINGS

     On April 10, 2009, Steve Martinez ("plaintiff"), filed a complaint
seeking judicial review of the denial of benefits by the Commissioner
pursuant to the Social Security Act ("the Act").  On July 16, 2009,
plaintiff filed a brief in support of his complaint. On August 14, 2009,
the Commissioner filed a brief in opposition.

1       <u>SUMMARY OF ADMINISTRATIVE RECORD</u>

2   1.   <u>Proceedings</u>

3       On July 19, 2006, plaintiff filed an application for disability

4   insurance benefits, (TR 73-75),[1] alleging disability since March 1, 2005,

5   due to post-traumatic stress disorder ("PTSD") and prostate cancer

6   associated with herbicide exposure, (TR 84), which plaintiff has

7   testified is now in remission, (TR 30).   The application was denied

8   initially and upon reconsideration.   (TR 43-46, 50-54.)

9       On June 4, 2007, plaintiff filed a request for a hearing before an

10  administrative law judge ("ALJ").   (TR 55.)   On July 28, 2008,

11  plaintiff, represented by an attorney, appeared and testified before an

12  ALJ.   (TR 23-36.)   On August 20, 2008, the ALJ issued a decision finding

13  that plaintiff is not disabled, as defined by the Act, and thus was not

14  eligible for benefits.   (TR 9-20.)   On August 21, 2008, plaintiff filed

15  a request with the Social Security Appeals Council to review the ALJ's

16  decision.   (TR 8.)   On February 10, 2009, the request was denied.   (TR

17  1-3.)   Accordingly, the ALJ's decision stands as the final decision of

18  the Commissioner.

19      Plaintiff subsequently sought judicial review in this court.

20  2.   <u>Summary Of The Evidence</u>

21      The ALJ's decision is attached as an exhibit to this opinion and

22  order and materially summarizes the evidence in the case.

23                 <u>PLAINTIFF'S CONTENTIONS</u>

24      Plaintiff essentially contends that the ALJ erred in:

25  _____

26      [1]   "TR" refers to the transcript of the record of
    administrative proceedings in this case and will be followed by
27  the relevant page number(s) of the transcript.

28                         2

1   1.   Finding that the only limitation that stems from plaintiff's PTSD

2       is a limitation to simple, routine, entry-level work;

3   2.   Failing to give weight to the decision of the Department of

4       Veterans' Affairs that plaintiff is totally disabled due, according

5       to plaintiff, to his PTSD; and,

6   3.   Finding plaintiff's subjective statements regarding his symptoms

7       not to be credible.

8

**STANDARD OF REVIEW**

9      Under 42 U.S.C. §405 (g), this court reviews the Commissioner's

10  decision to determine if: (1) the Commissioner's findings are supported

11  by substantial evidence; and, (2) the Commissioner used proper legal

12  standards.  <u>Macri v. Chater</u>, 93 F.3d 540, 543 (9th Cir. 1996).

13  Substantial evidence means "more than a mere scintilla," <u>Richardson v.</u>

14  <u>Perales</u>, 402 U.S. 389, 401 (1971), but less than a preponderance.

15  <u>Sandgathe v. Chater</u>, 108 F.3d 978, 980 (9th Cir. 1997).

16      When the evidence can reasonably support either affirming or

17  reversing the Commissioner's conclusion, however, the Court may not

18  substitute its judgment for that of the Commissioner.  <u>Flaten v. Sec'y</u>

19  <u>of Health and Human Servs.</u>, 44 F.3d 1453, 1457 (9th Cir. 1995).

20      The court has the authority to affirm, modify, or reverse the

21  Commissioner's decision "with or without remanding the cause for

22  rehearing."  42 U.S.C. §405 (g).

23

**DISCUSSION**

24  1.   <u>The Sequential Evaluation</u>

25      A person is "disabled" for the purpose of receiving social security

26  benefits if he or she is unable to "engage in any substantial gainful

27  activity by reason of any medically determinable physical or mental

28

3

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423 (d) (1) (A).

The Commissioner has established a five-step sequential evaluation for determining whether a person is disabled. First, it is determined whether the person is engaged in "substantial gainful activity." If so, benefits are denied.

Second, if the person is not so engaged, it is determined whether the person has a medically severe impairment or combination of impairments. If the person does not have a severe impairment or combination of impairments, benefits are denied.

Third, if the person has a severe impairment, it is determined whether the impairment meets or equals one of a number of "listed impairments." If the impairment meets or equals a "listed impairment," the person is conclusively presumed to be disabled.

Fourth, if the impairment does not meet or equal a "listed impairment," it is determined whether the impairment prevents the person from performing past relevant work. If the person can perform past relevant work, benefits are denied.

Fifth, if the person cannot perform past relevant work, the burden shifts to the Commissioner to show that the person is able to perform other kinds of work. The person is entitled to benefits only if the person is unable to perform other work. 20 C.F.R. § 404.1520; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).

2.   Issues

   A.   Residual Functional Capacity ("RFC") (Issue # 1)

Plaintiff first contends the ALJ erred by omitting from the

4

residual functioning capacity ("RFC") assessment various limitations on his mental functioning opined by treating psychiatrist Ahmad K. Tarar, M.D., consultative psychiatrist John S. Woodard, M.D., and two state agency reviewing psychiatrists, Calmeze Dudley, M.D., and K.M. Mendeldohn, M.D.

The RFC is the most the plaintiff can still do after considering the effects of any physical or mental limitations that affect the ability to perform work-related tasks. 20 C.F.R. § 404.1545. In assessing plaintiff's RFC, the ALJ must consider all relevant evidence, including medical evidence and plaintiff's testimony. Id. In doing so, the ALJ is required to set out a detailed and thorough summary of the facts and conflicting clinical evidence, to state any interpretations, and to make findings, Morgan v. Comm'r of Social Sec. Admin., 169 F.3d 595, 600-01 (9th Cir. 1999) (citation omitted).

The ALJ may omit opined limitations, however, that the ALJ finds are not based on substantial evidence, provided that the ALJ sets out legally sufficient reasons for doing so. Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (citation omitted). When the medical evidence is in conflict, it is the province of the ALJ to weigh and chose between the contradicted evidence. See Sanchez v. Sec'y of Health & Human Servs., 812 F.2d 509, 511 (9th Cir. 1987). He may reject the opinion of a physician, treating or otherwise, therefore, if he points to "specific and legitimate reasons" in the record for doing so. See Batson v. Comm'r of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004.) The court must affirm the ALJ's determination of the plaintiff's RFC if the ALJ applied the proper legal standards and the decision is supported by substantial evidence. Bayliss v. Barnhart, 427 F.3d at 1217.

1    The ALJ applied the proper legal standards here.  At step two of
2    the sequential evaluation, he concluded that plaintiff suffers from the
3    "severe" limitation of PTSD.   The ALJ then set out and weighed the
4    findings  and  conclusions  of  the  four  physicians  of  record,  and  the
5    testimony of plaintiff and a lay witness.   Three of the physicians of
6    record, Dr. Woodard, Dr. Dudley, and Dr. Mendelsohn, found plaintiff to
7    be "only mildly to moderately impaired," and able to perform simple,
8    repetitive tasks.  (See TR 342-57, 358-60, 375.)  In keeping with these
9    findings, the ALJ concluded plaintiff remains able to perform "simple,
10   routine, entry-level tasks," (TR 15), and "unskilled" work.   Unskilled
11   work usually involves jobs in which the individual works with objects
12   rather than people.   See Social Security Ruling ("SSR") 85-15.

13       The ALJ rejected any greater limitations opined by Dr. Tarar for
14   multiple specific and legitimate reasons.  First, Dr. Tarar's opinion is
15   contradicted by his own treatment notes.   (See TR 16.)   Dr. Tarar
16   opined, for example, that plaintiff suffers from anxiety, (TR 16, 332),
17   but his treatment notes indicate only that plaintiff experienced some
18   situation-specific anxiety due to elevated PSA levels and a positive
19   prostate biopsy.   (E.g., TR 16, 161.)   Furthermore, Dr. Tarar's
20   treatment notes indicate plaintiff's speech was goal directed, his
21   insight was good, his judgment was fair, and that he had no cognitive
22   deficits.   (TR 161, 188, 198, 204, 222, 253-54, 257.)   Indeed, as the
23   ALJ pointed out, throughout 2006 and 2007 Dr. Tarar repeatedly assessed
24   plaintiff with a global assessment of functioning ("GAF") score of 55,
25   which indicates he assessed plaintiff as having, at most, "moderate"
26   difficulties in social, occupational, or school functioning (see TR 161,

28

1 | 188, 198, 253, 255).[2] Diagnostic and Statistical Manual of Mental

2 | Disorders, (4th ed., book rev. 2000), p. 20 ("DSM-IV"). In addition, the

3 | ALJ afforded Dr. Tarar's little weight because the doctor based his

4 | conclusion that plaintiff cannot work, in part, upon the fact that

5 | plaintiff has prostate cancer, which plaintiff testified is now in

6 | remission and which the ALJ found not to be disabling.[3]  (TR 17, 30.)

7 | These are all significant and legitimate reasons to reject Dr.

8 | Tarar's opined limitations. See Batson v. Comm'r of Social Sec. Admin.,

9 | 359 F.3d at 1195 ("specific and legitimate" reasons include, for

10 | example, that the doctor's opinions are "conclusory, brief, and

11 | unsupported by the record as a whole," or "by objective medical

12 | findings" ) (citation omitted).

13 | The ALJ also omitted from the RFC certain opined limitations to the

14 | effect that plaintiff's social functioning is impaired due to his PTSD

15 | to a greater extent than is encompassed by the RFC, i.e., that he has

16 | problems with anger, and is, essentially, isolative and guarded, because

17 |

18 | [2]   The GAF score "is a rough estimate of an individual's psychological, social, and occupational functioning used to

19 | reflect the individual's need for treatment. DSM-IV, p. 20. A GAF score of 55 indicates moderate symptoms or moderate

20 | difficulty in social, occupational, or social functioning. Id., p. 32; Vargas v. Lambert, 159 F.3d 1161, 1164 n.2 (9th Cir.

21 | 1998).

22 | [3]   Specifically, Dr. Tarar observed that plaintiff has been "declared a "100% disabled veteran," and is, thus, unable to

23 | work.  (TR 334.)  As the ALJ correctly found, however, the VA rated plaintiff at 100 percent disabled due to his cancer and not

24 | due to his PTSD, which was given only a 70 percent rating. (See TR 293.) Because Dr. Tarar's conclusion of total disability is

25 | based, at least in part, upon a condition that is no longer disabling, his conclusion that plaintiff cannot work is not

26 | probative of plaintiff's impairments due to PTSD, and need not be afforded any weight.  See Vincent v. Heckler, 739 F.2d at 1394-95

27 | (only probative evidence must be considered).

28 |

1  the ALJ found these limitations were not supported by substantial record

2  evidence.  As will be discussed in greater detail with respect to issue

3  number 3 below, the ALJ noted that plaintiff's activities establish that

4  he is, in fact, increasingly able to relate to other people.  This is a

5  significant and legitimate reason to decline to include such limitations

6  within the RFC.  See, e.g., Tommasetti v. Astrue, 533 F.3d 1035, 1041

7  (9th Cir. 2008)(citation omitted).   In any event, any error in this

8  regard is harmless.  The limitation to "unskilled" work assumes jobs

9  that involve little interaction with others.  See SSR 85-15.  And none

10 of the jobs the ALJ proposed for plaintiff, including janitor, kitchen

11 helper, and packager, requires extensive contact with the public or with

12 co-workers. See, e.g., Dictionary of Occupational Titles, (4th Ed. 1991),

13 ("DICOT"), §§ 381.687-018, 318.687-010, 920.587-018.

14      The ALJ also permissibly rejected opined limitations on plaintiff's

15 attention, persistence, pace, attendance, or follow through.   The

16 medical evidence is in conflict in this regard, and it is the province

17 of the ALJ to evaluate and choose among the conflicting opinions.  See

18 Sanchez v. Sec'y of Health and Human Servs., 812 F.2d at 511.  In any

19 event, even to the extent plaintiff is limited in his concentration,

20 attention, or pace, the RFC for "simple, routine, entry-level work" and

21 unskilled work adequately encompasses these types of limitations.  See

22 Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008) (ALJ's

23 assessment of a plaintiff adequately captures restrictions on

24 concentration, attention level, and stress when assessment is consistent

25 with restrictions identified in the medical testimony).

26      Accordingly, the RFC assessment is supported by substantial

27 evidence and free from material legal error.

28

8

1

 **B.   Assessment of total disability (Issue # 2)**

2     Plaintiff next contends the ALJ erred in failing to give "great

3 weight" to the VA determination that he was "100% disabled."

4     The ALJ gave adequate weight to plaintiff's VA rating here.  As was

5 discussed above, the VA's 100 percent disability rating was based on

6 plaintiff's cancer, (see TR 293), which is in remission, (see TR 31).

7 The VA found a 100 percent rating was not warranted for plaintiff's PTSD

8 because he did not suffer total occupational and social impairment as a

9 result of this diagnosis.   (TR 300.)   In other words, the VA found

10 plaintiff's PTSD did not render plaintiff unable to work.   (Id.) The

11 ALJ's findings are not inconsistent with this.

12     In any event, the ALJ is not wholly bound by the VA's determination

13 and may give less weight to, or even reject, a VA disability rating if

14 he finds specific and valid reasons for doing so in the evidence of

15 record. McCartney v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002).

16 While the ALJ did not specifically address and evaluate plaintiff's 70

17 percent VA rating due to his PTSD, he did address and discount the

18 findings of Dr. Tarar, from whose findings the VA rating was derived.

19 (See TR 16-17, 298, 300.)   The ALJ need not specifically address

20 cumulative evidence.  See Valentine v. Comm'r of Social Sec. Admin., –

21 F.3d –, 2009 WL 2138981, *7-*9 (9th Cir., July 20, 2009) (holding that

22 the ALJ provided legally sufficient reasons to reject the VA disability

23 rating by setting out legally sufficient reasons to reject the VA

24 physician's opinions, particularly given that she considered additional

25 medical evidence not available to the VA); see also Magallanes v. Brown,

26 881 F.2d at 755 (ALJ is not required to address and discount the

27 cumulative evidence).

28

1  Accordingly, there is no material legal error here.

2  C.   **Credibility (Issue # 3)**

3  Finally, plaintiff contends the ALJ erred by discounting his

4  subjective statements as to the intensity, persistence, and limiting

5  effects of his PTSD.

6  In making the credibility determination, the ALJ may use "ordinary

7  techniques of credibility evaluation." Tonapetyan v. Halter, 242 F.3d

8  1144, 1147-48 (9th Cir. 2001). See also Burch v. Barnhart, 400 F.3d 676,

9  680 (9th Cir. 2005).  The ALJ may consider, for example, plaintiff's

10  reputation for truthfulness and any inconsistent statements in

11  plaintiff's testimony, or between plaintiff's testimony and the record.

12  Tonapetyan v. Halter, 400 F.3d at 1147.

13  If the ALJ finds the plaintiff not to be credible, the ALJ must

14  "specifically identify the testimony he finds not to be credible and

15  must explain what evidence undermines the testimony." Holohan v.

16  Massanari, 246 F. 3d 1195, 1208 (9th Cir. 2001).  These findings must be

17  "'sufficiently specific to permit the court to conclude that the ALJ did

18  not arbitrarily discredit claimant's testimony.'" Tommasetti v. Astrue,

19  533 F.3d at 1039 (9th Cir. 2008)(quoting Thomas v. Barnhart, 278 F.3d

20  947, 958 (9th Cir. 2002)). When the ALJ has followed these standards,

21  the assessment of plaintiff's credibility must be given great weight.

22  Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985).

23  The ALJ here found plaintiff's subjective statements were credible

24  only to a limited extent, and he set out multiple legally sufficient

25  reasons for finding plaintiff, overall, not to be a credible witness.

26  First, the ALJ found plaintiff's activities contradicted his

27  contentions regarding the extent of his disability.  As the ALJ

28  10

observed, plaintiff lives alone, is able to care for himself, can cook his own meals, often eats out, (TR 18, 342-45), exercises regularly and lifts weights, and took a trip to New Mexico to visit his brother, (TR 18, 232-92, 22).  Such activities suggest plaintiff can perform the basic demands of simple, unskilled work.  See, e.g., Stubbs-Danielson v. Astrue, 539 F.3d at 1175 (ALJ properly rejected plaintiff's statements to the effect of total disability when the record reflected she engaged in "normal activities of daily living, including cooking, house cleaning, doing laundry, and helping her husband in managing finances"); Tommasetti v. Astrue, 533 F.3d 1040 (ALJ properly inferred plaintiff was not as physically limited as claimed based on his ability to travel to Venezuela for an extended time to care for an ailing sister); Morgan v. Comm'r of Social Sec. Admin, 169 F.3d at 600 (ALJ's credibility determination affirmed when ALJ determined that plaintiff's ability to fix meals, do laundry, work in the yard, and occasionally care for his friend's child served as evidence of his ability to work).

While plaintiff is correct that "one does not need to be 'utterly incapacitated' in order to be disabled," Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001), it is the province of the ALJ to weigh credibility, and when the evidence, as here, is susceptible of more than one rational interpretation, it is the Commissioner's conclusion which must be upheld.  Key v. Heckler, 754 F.2d 1545, 1549 (9th Cir. 1985).

Second, the ALJ found plaintiff's statements and activities were inconsistent and, therefore, suggest he is not reliable.  For example, although plaintiff claims he cannot tolerate the company of others, the ALJ found he is "obviously not intolerant of the company of strangers," (TR 18), given that he is able to make his own meals but nonetheless

elects to eat out regularly.  He is reconnecting with his family, (TR 18, 162), and participates in weekly veterans administration group sessions, (TR 18, 397), yet there is no evidence he does not get along well with other session members.  (TR 18.)  Similarly, though plaintiff claims to have "no energy," he alternately and contradictorily has said that he "feels well, is exercising regularly and lifting weights," (TR 18, 396-97), and, on top of this, as the ALJ found, plaintiff manages to "live[] by himself and take[] care of all his own needs."  (TR 18.)  The ALJ is permitted to infer from inconsistencies such as these that plaintiff's subjective statements are not entirely credible.  <u>See</u> <u>Tonapetyan v. Halter</u>, 400 F.3d at 1147-48.

Third, the ALJ found that plaintiff was, overall, a "very vague" witness with respect to his daily activities and with respect the frequency of various symptoms. (<u>See</u> TR 18, 26.)  This too, is a permissible reason to discredit a plaintiff's subjective statements. <u>See</u> <u>Tommasetti v. Astrue</u>, 533 F.3d at 1040 (ALJ may discredit a plaintiff's testimony when the plaintiff is a "vague witness" and unclear with respect to his abilities and symptoms).

Fourth, the ALJ found plaintiff's credibility was suspect because it was unlikely his PTSD became disabling only after a 35-year work history. (TR 18).  It is, again, the province of the ALJ to draw such inferences, when they are reasonably supported by the record.  <u>See</u>, <u>e.g.</u>, <u>Bayliss v. Barnhart</u>, 427 F.3d at 1216 (holding that ALJ properly discounted opinion of physician regarding plaintiff's mental limitations because the limitations were long-standing and did not prevent plaintiff from completing high school and college, finishing a Certified Nurse's Aide training program, and participating in military training).  Indeed,

12

Dr. Tarar's treatment notes suggest plaintiff's PTSD and its attendant anti-social behaviors have lessened over the last several years as plaintiff has undergone treatment, taken medication, and refrained from drinking alcohol. (E.g., TR 271, 275.)   In 2006 and 2007 Dr. Tarar assessed plaintiff with a GAF score of 55, which, again, indicates at most "moderate" impairments in functioning, whereas in 2005 he assessed plaintiff at a 50 GAF score, which suggests he had, at that time, "serious" impairments in social functioning.[4]   See DSM-IV, p. 32.

Finally, the ALJ found that plaintiff's receipt of VA benefits suggested he had a disincentive to work, which, he further found, made his claim of total disability less credible.   (TR 18.)   Plaintiff correctly points out that the receipt of benefits under a parallel scheme is, alone, not a sufficient reason to discredit a claim of disability.  See Eichel v. N.Y. Central R.R., 375 U.S. 253, 255 (1963). As the court has already discussed, however, the ALJ cited multiple other reasons for discrediting plaintiff's testimony.   Moreover, plaintiff stated that he stopped working because his "VA benefits came through." (TR 85.)   The ALJ may permissibly consider evidence suggesting an improper financial motive for seeking benefits.   See Tommasetti v. Astrue, 533 F.3d at 1040.

Accordingly, the ALJ's credibility determination is based upon substantial evidence in the record and free from material legal error.

_____

[4]   A GAF score between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  DSM-IV, p. 32.

| | |
|---|---|
| 1 | **CONCLUSION** |
| 2 | If the evidence can reasonably support either affirming or |
| 3 | reversing the Commissioner's conclusion, the court may not substitute |
| 4 | its judgment for that of the Commissioner.  <u>Flaten v. Sec'y of Health</u> |
| 5 | <u>and Human Servs.</u>, 44 F.3d at 1457. |
| 6 | After careful consideration of the record as a whole, the |
| 7 | magistrate judge concludes that the Commissioner's decision is supported |
| 8 | by substantial evidence and is free from material legal error. |
| 9 | Accordingly, it is ordered that judgment be entered in favor of the |
| 10 | Commissioner. |
| 11 | |
| 12 | DATED: Aug. 25, 2009 |
| 13 | |
| 14 | CAROLYN TURCHIN<br>UNITED STATES MAGISTRATE JUDGE |

14

**SOCIAL SECURITY ADMINISTRATION**
**Office of Disability Adjudication and Review**

**DECISION**

<u>**IN THE CASE OF**</u>                                    <u>**CLAIM FOR**</u>

Period of Disability and Disability Insurance
Benefits

Steve Martinez
_____
(Claimant)

_____          _____
(Wage Earner)                        (Social Security Number)

<u>**JURISDICTION AND PROCEDURAL HISTORY**</u>

On July 7, 2006, the claimant filed an application for a period of disability and disability
insurance benefits, alleging disability beginning March 1, 2005. The claim was denied initially
and upon reconsideration on April 4, 2007. Thereafter, the claimant filed a timely written
request for hearing on June 4, 2007 (20 CFR 404.929 *et seq.*). The claimant appeared and
testified at a hearing held on July 28, 2008, in San Bernardino, CA. The claimant is represented
by Jason Miller, an attorney.

<u>**ISSUES**</u>

The issue is whether the claimant is disabled under sections 216(i) and 223(d) of the Social
Security Act. Disability is defined as the inability to engage in any substantial gainful activity by
reason of any medically determinable physical or mental impairment or combination of
impairments that can be expected to result in death or that has lasted or can be expected to last
for a continuous period of not less than 12 months.

There is an additional issue whether the insured status requirements of sections 216(i) and 223 of
the Social Security Act are met. The claimant's earnings record shows that the claimant has
acquired sufficient quarters of coverage to remain insured through March 31, 2008. Thus, the
claimant must establish disability on or before that date in order to be entitled to a period of
disability and disability insurance benefits.

After careful consideration of all the evidence, I conclude the claimant has not been under a
disability within the meaning of the Social Security Act from March 1, 2005 through the date of
this decision.

<u>**APPLICABLE LAW**</u>

Under the authority of the Social Security Act, the Social Security Administration has
established a five-step sequential evaluation process for determining whether an individual is
disabled (20 CFR 404.1520(a)). The steps are followed in order. If it is determined that the

See Next Page                                              **12**





claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, I must determine whether the claimant is engaging in substantial gainful activity (20 CFR 404.1520(b)). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 404.1572(a)). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 404.1572(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA (20 CFR 404.1574 and 404.1575). If an individual engages in SGA, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, and work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, I must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 404.1521; Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p). If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, I must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526). If the claimant's impairment or combination of impairments meets or medically equals the criteria of a listing and meets the duration requirement (20 CFR 404.1509), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, I must first determine the claimant's residual functional capacity (20 CFR 404.1520(e)). An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. In making this finding, I must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e) and 404.1545; SSR 96-8p).

Next, I must determine at step four whether the claimant has the residual functional capacity to perform the requirements of his past relevant work (20 CFR 404.1520(f)). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b) and 404.1565). If

Steve Martinez                                     Page 3 of 9

the claimant has the residual functional capacity to do his past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 404.1520(g)), I must determine whether the claimant is able to do any other work considering his residual functional capacity, age, education, and work experience. If the claimant is able to do other work, he is not disabled. If the claimant is not able to do other work and meets the duration requirement, he is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 404.1512(g) and 404.1560(c)).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, I make the following findings:

**1.   The claimant meets the insured status requirements of the Social Security Act through March 31, 2008.**

**2.   The claimant has not engaged in substantial gainful activity since March 1, 2005, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).**

**3.   The claimant has the following severe impairments: post-traumatic stress disorder and alcohol abuse (20 CFR 404.1520(c)).**

The above impairments more than minimally limit the claimant's ability to perform basic work activities.

**4.   The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).**

This finding is supported by the opinion of the State Agency physicians who also considered the relevant Listings.

The claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.06 or 12.09. In making this finding, I have considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated



episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

In activities of daily living, the claimant has mild restriction. In social functioning, the claimant has slight to moderate difficulties. With regard to concentration, persistence or pace, the claimant has no difficulties. As for episodes of decompensation, the claimant has experienced no episodes of decompensation.

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, the "paragraph B" criteria are not satisfied.

I have also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria.

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis.

**5.   After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: simple, routine, repetitive, entry-level tasks.**

In making this finding, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. I have also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the claimant's symptoms, I must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, I must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other

Steve Martinez                                                     Page 5 of 9

symptoms are not substantiated by objective medical evidence, I must make a finding on the credibility of the statements based on a consideration of the entire case record.

The claimant alleges disability due to post-traumatic stress disorder and prostrate cancer (Exhibit 2E, p. 1).  According to the claimant, he has panic attacks at work, does not sleep well and has no energy (Exhibit 2E, p. 2).

The claimant was diagnosed with adenocarcinoma of the prostate for which he has refused definitive treatment by way of either surgery or radiation and has opted for observation and herbal treatment.  Digital rectal examination is basically normal (Exhibit 1F, p. 3).  The adenocarcinoma imposes no limitations.  The claimant is noted to be a weight lifter and to appear very fit (Exhibit 1F, p. 3).  On April 14, 2008, he reported feeling well (Exhibit 12F, p. 20).  He exercises about five times a week, lifts weights three times a week, and walks a lot (Exhibit 12F, p. 21).

X-rays have shown some mild degenerative changes of the left foot requiring no treatment (Exhibit 2F, p. 11).  The claimant had no complaints at the hearing regarding the feet.

The claimant was diagnosed with dry senile macular degeneration and glaucoma, the latter treated with drops.  Visual acuity on September 20, 2007 without correction was 20/20 in the right eye and 20/50 in the left with pinhole improvement to 20/30 (Exhibit 12F, p. 27).  The claimant has a California driver license without restriction even for lenses.  There is no severe ocular impairment.

Mentally, the claimant has a very questionably severe impairment from an alleged post-traumatic stress disorder and alcohol abuse that never deprived the claimant of simple, routine, repetitive tasks and the ability to perform unskilled, entry level (SVP 2) work.

On a Mental Disorder Questionnaire Form signed by the treating psychiatrist Dr. Tarar (Exhibit 5F), the doctor said the claimant was 100 percent disabled due to chronic post-traumatic stress disorder and physical/medical condition. The claimant is on psychotropic medications, is anxious, guarded, avoidant, fearful, isolative and avoids people.  At times he has poor concentration due to anxiety and stress.  Insight is fair and judgment questionable, i.e., does not agree with treatment recommendations for his cancer. The claimant has experienced mood swings and anger outbursts.  The claimant is able to take care of his basic needs.

Per Social Security Ruling 96-2P, controlling weight is generally given to the treating physician's opinion if that opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record.

I give little weight to the opinion of Dr. Tarar.  It is unsupported by the doctor's own treating notes, the psychiatric consultative examination (Exhibit 7F), and other psychiatric notes from Loma Linda Veterans Administration Medical Center (VA) (Exhibits 1F, 2F and 12F). The claimant takes psychotropic medication with no adverse side effects (Exhibit 2F, pages 22, 30; Exhibit 12F, p. 28).  Though the claimant did have some anxiety about his elevated PSA level and his positive prostate biopsy, on mental status examination, he was nondelusional and denied hallucinations.  Speech was goal directed, insight good, judgment fair, and there were no

See Next Page

cognitive deficits. Global Assessment of Functioning was 53-55 (Exhibit 2F, pp. 22-24, 26, 31; Exhibit 12F, pages 19, 28, 29).   According to the Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), (4th ed., 1994), a GAF score between 51-60 indicates only moderate symptoms or moderate difficulty in social, occupational, or school functioning.  As noted by the State Agency (Exhibit 10F, p. 11), Dr. Tarar's assessment is based on the VA rating of 100 percent disabled veteran (Exhibit 3F).  This 100 percent disability is based on the claimant's prostrate cancer not on a mental impairment.  Dr. Tarar's opinion is also inconsistent with other significant medical opinions.  Both the State Agency review psychiatrists (Exhibits 8F and 9F) and the psychiatric consultative examiner (Exhibit 7F) found the claimant only mildly to moderately impaired and capable of at least simple repetitive tasks.  Dr. Tarar's opinion is, therefore, not worthy of significant probative weight in this decision.

The claimant underwent a psychiatric consultative examination on December 26, 2006 (Exhibit 7F).  He complained of anger, depression, insomnia and nightmares.  The claimant reported a history of persistent psychiatric symptomatology since the traumatic experience of Vietnam combat while serving in the Army about 35 years ago. He has continued to be very preoccupied by the experience and he relives this in nightmares and flashbacks. He has become mistrustful of people, has difficulty with anger control and  avoids social contact. He insisted that he had abstained from alcohol during the last 18 months. He participates in a group therapy program for post-traumatic stress disorder every two weeks. On mental status examination, facial expressions, verbalizations and postures suggested slight to moderate emotional tension and emotional over-reactivity. Psychomotor activity and facial mobility were somewhat reduced.  He maintained fair eye contact with the examiner. He expressed anger during the interview but this was never directed at the examiner. There was some impatience and irritability and slight generalized fearfulness. Affect showed slight to moderate overall depression. Prevailing ideation did not suggest significant abnormality in thought processes. There did appear to be significant preoccupation with past traumatic experiences and he said he relives these experiences in flashbacks and nightmares. There are persistent feelings of anger and this seems to contribute to his avoidance of social contact. There was no paranoia, delusions, or abnormal perceptions. The claimant recalled the current president but not the current vice president. He recalled former Presidents Clinton, Carter and Reagan. He identified the current California governor but not former Governor Davis. He was able to subtract sevens serially from 100 to 79 without error. There would be slight to moderate limitation for withstanding normal stresses and pressures in the workplace and for interacting with the public. There would be slight limitation in interacting with supervisors and coworkers, maintaining concentration and attention and in performing detailed, complex tasks.  The claimant would have no limitation in performing simple, repetitive tasks and slight to moderate limitation for completing a normal workweek without interruption.

State Agency review psychiatrists concluded that the claimant had a severe anxiety-related disorder (PTSD) and substance addiction disorder of alcohol abuse in remission (Exhibit 8F). With regard to the Part B criteria, the claimant would have mild limitation in activities of daily living, moderate difficulty maintaining social functioning and maintaining concentration, persistence and pace.  There would be no repeated episodes of decompensation, each of extended duration. The claimant could perform simple tasks in a low stress environment with reduced co-worker and public contact (Exhibit 9F, p. 3).

In evaluating the claimant's disability status, I have also carefully considered alcohol abuse as an independent basis for disability. Although the claimant's alcohol abuse is asserted to be in remission, there is no corroboration of that by way of independent evidence and especially none from random screens. At any rate, mental status examinations did not reveal significant objective findings. Notably, there was no evidence of confusion, disorientation, gross memory impairment, hallucinations, or delusions. At the hearing, the claimant showed no signs of distress or inability to comprehend questions or explain himself. He did not require repetition of questions posed to him. Despite a possible substance abuse disorder, the claimant has not demonstrated marked restriction in: activities of living or social functioning; deficiencies of concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner; or repeated episodes of deterioration or decompensation which would cause him to withdraw from a situation. The claimant has thus not established disabling symptoms due to substance abuse.

After considering the evidence of record, I find that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessed herein. The claimant lives alone and takes care of all of his self-help activities. He is able to prepare his own meals but eats out regularly and obviously is not intolerant of the company of strangers. He sees his psychiatrist every two to three months or so for a brief session in Loma Linda. He sees a therapist individually once a month, attends group sessions about every two to three weeks, and now attends a group session every Thursday (Exhibit 12F, p. 21). He is also reconnecting with his family (Exhibit 1F, p. 4). He frequently drives 80 plus miles from Barstow to San Bernardino and Loma Linda for these Veterans Administration visits and there is no evidence he does not get along well with other session members. There is simply no evidence that the B criteria are any greater than assessed herein. Moreover, it seems most improbable that the claimant's post-traumatic stress disorder from being in Vietnam should suddenly become disabling after 35 years when it allowed many years of adequate adaptive behavior reflected in the earnings record after serving in Vietnam to the present. Of course, the receipt of $2,800 tax-free money from the VA, which amounts to an annual income in excess of any year of earnings except 1988, eliminates any necessity or even reason to work and provides ample motivation for the claimant's assertions of mental symptoms. His testimony establishes no different conclusions. He asserted he was a welder for many years but stopped because of his eyes. He stopped his last job as a fry cook for alleged mental reasons. He asserted anxiety and panic with somatic symptoms. The claimant was very vague as to frequency but assertedly they are stress related with poor sleep because of nocturia and nightmares. The claimant said he has no energy, but was very vague as to his activities of daily living. However, he does live by himself and takes care of all his own needs. The claimant said he feels well, is exercising regularly and lifting weights (Exhibit 12F, pp. 20-21). The claimant has a California driver license good to October 2009 and is without restriction even for lenses. He has no adverse side effects from medication (Exhibit 2F, pages 22, 30; Exhibit 12F, p. 28).

I have read and considered the statements from the claimant's friend, Wilfred Abeyta (Exhibit 3E) and given them little weight as the statements are inconsistent with the record. Mr. Abeyta said that the claimant stays away from people, yet the claimant goes to the store, to group therapy, eats out in restaurants and is reconnecting with his family (Exhibit 1F, p. 4). According to the friend, the claimant has to be reminded to take care of personal hygiene and take his

See Next Page

medications. Yet, on mental status examinations there were no cognitive deficits and no significant memory problems. Mr. Abeyta said that the claimant does not cook, does no activities of daily living except for doing laundry and is too tired to do house or yard work; yet, the claimant exercises about five times a week, lifts weights three times a week, walks a lot and appears to be fit (Exhibit 12F, p. 21). The claimant told the psychiatric consultative examiner that he can prepare his own meals although he usually eats out (Exhibit 7F). Mr. Abeyta said that the claimant used to walk and take trips but now just watches television. This is inconsistent with the claimant's own statements that he walks a lot, and he also took a trip to New Mexico to visit his brother (Exhibit 2F, p. 22). Since being diagnosed with cancer, the claimant is weak and tired; however, the claimant says he feels well, is exercising regularly and lifting weights (Exhibit 12F, pp. 20-21). Mr. Abeyta said that the claimant has poor grooming, and is "dirty and filthy." However, treating notes from the VA described the claimant as neatly groomed and dressed (Exhibit 12F, p. 19), and the psychiatric consultative examiner described the claimant as reasonably well groomed (Exhibit 7F).

**6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565).**

The claimant has past relevant work as a short order cook and welder which were not unskilled. Accordingly, the claimant is unable to perform past relevant work.

**7.    The claimant was born on October 13, 1946 and was an individual of advanced age on the alleged disability onset date (20 CFR 404.1563).**

**8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).**

**9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).**

**10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).**

In determining whether a successful adjustment to other work can be made, I must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the

Steve Martinez (                    Page 9 of 9

claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).

The claimant's ability to perform work at all exertional levels has been compromised by nonexertional limitations. However, these limitations have little or no effect on the occupational base of unskilled work at all exertional levels. The claimant is capable of performing thousands of unskilled jobs such as dishwasher, kitchen helper, industrial/hospital cleaner, assembler, janitor, and packager.

A finding of "not disabled" is therefore appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines.

**11. The claimant has not been under a disability, as defined in the Social Security Act, from March 1, 2005 through the date of this decision (20 CFR 404.1520(g)).**

### DECISION

Based on the application for a period of disability and disability insurance benefits filed on July 7, 2006, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.

/s/ *F. Keith Varni*
_____
F. Keith Varni
Administrative Law Judge

KQL                                    August 20, 2008
                                       _____
                                       Date

20